Jennifer A. Lenze, CA Bar # 246858
LENZE LAWYERS, PLC.
999 Corporate Drive, Suite 100
Ladera Ranch, California 92694
Telephone: (310) 322-8800
Facsimile: (310) 322-8811
jlenze@lenzelawyers.com

Elizabeth A. Fegan (*pro hac vice forthcoming*)
Megan E. Shannon (*pro hac vice forthcoming*)
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Telephone: 312.741.1019
Facsimile: 312.264.0100
beth@feganscott.com
megan@feganscott.com

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY HUFTON and ARAMIE MCDONALD,<br><br>    Plaintiffs,<br><br>    v.<br><br>GENERAC POWER SYSTEMS, INC. and GENERAC HOLDINGS, INC.,<br><br>    Defendants | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiffs Gary Hufton and Aramie McDonald, by and through their

attorneys, bring this class action complaint against Generac Power Systems, Inc. and

Generac Holdings, Inc. (collectively "Generac" or "Defendants"), on behalf of

themselves and all others similarly situated, and allege, upon their personal knowledge as to their own actions and upon information and belief as to all other matters, as follows:

## I.    INTRODUCTION

1.    A home is the most important investment a person can make. It's also the most important place for people to be safe and free from danger.

2.    Generac, which has been producing residential power solutions since 1959, is no stranger to the importance of keeping homes safe. Despite its long history in the home power industry, Generac has designed, manufactured, sold, and installed solar energy systems containing a defective, and potentially catastrophic, component.

3.    Specifically, Generac designed, manufactured, sold, and installed solar energy management systems (the "Power Systems"), containing the SnapRS 801 switch, a solar energy component that is defective and malfunctions by turning on and off repeatedly, eventually melting or deforming and causing total system failure (the "Defect").

4.    Power System owners have reported a significant decrease in solar production caused by the Defect, which effectively turns off groups of solar panels when a single SnapRS 801 component fails. The Defect is so pervasive that some Power Systems are rendered completely inoperable.

5.    Most concerning of all, the Defect has caused a number of reported fires, putting entire homes and families at risk of catastrophic fire.

CLASS ACTION COMPLAINT

6. Generac's Power Systems carry a hefty price tag and are marketed as a long-term investment that will save consumers thousands of dollars by reducing their dependency on traditional power sources. Instead, consumers like Plaintiffs who made a substantial investment in a Power System are left with a defective system that significantly under-produces, frequently malfunctions or stops working altogether, and even puts homes at risk of fire.

7. Generac has known about the Defect and elevated rates of failure for years but has yet to disclose the full extent of the Defect or offer a *bona fide* fix. Despite continued Defect failures, reports of fires, and increasing reports of production issues with Power Systems, Generac has refused to recall the defective SnapRS switches.

8. As a result of Defendants' breaches of warranties, and unfair, deceptive, and/or fraudulent business practices, Power System owners, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or loss in value. The unfair and deceptive trade practices committed by Defendants caused Plaintiffs and the members of the Class damages, including but not limited to, loss of value, loss of use, and increased energy costs.

9. Accordingly, Plaintiffs bring this action to redress Generac's misconduct. Plaintiffs bring claims for damages and repair based on: (1) the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 23-1-2312; (2) breach of express warranty; (3) Song Beverly Consumer Warranties Act, Cal. Civ. Code §§ 1792; (4) breach of implied warranty; (5) California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; (6)

CLASS ACTION COMPLAINT

California False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq.; (7) the Oregon Unfair Trade Practices Act, Or. Rev. Stat. § 646.605, et seq.; and (8) unjust enrichment at common law.

## II.    JURISDICTION

10.    This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. §§1332(d)(2) and (6) because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

11.    Venue is proper in this judicial district under 28 U.S.C. § 1391 because Defendants transact substantial business in this district and because a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

12.    This Court has personal jurisdiction over Defendants by virtue of their transactions and business conducted in this judicial district, and because they are registered to do business in this district. Defendants have transacted and done business, and violated statutory and common law, in the State of California and in this judicial district.

## III.   PARTIES

**A.   Plaintiff Hufton**

13.    Plaintiff Gary Hufton ("Plaintiff Hufton") is a resident of Corbett, Oregon, who purchased a Generac Power System through Sunbridge Solar LLC, a Generac certified installer, in October 2019. Plaintiff's Power System was fully installed in June 2020. The total cost for his Power System was $36,896.00.

14.    Plaintiff Hufton's Power System included 20 solar panels, an inverter, and a battery. His Power System design included at least 3 SnapRS 801 switches.

15.    Plaintiff Hufton's residential Power System was designed to reduce his energy costs and reliance on fossil fuel-powered utilities, as well as to support his home as a source of backup power in the case of a total power failure or outage.

16.    Beginning in March 2022, Plaintiff Hufton's Power System began malfunctioning and his solar production went down to one-third of its usual production. Plaintiff Hufton was told it was an issue with the SnapRS units.

17.    In July of 2022, Plaintiff Hufton's SnapRS 801 switches were replaced with SnapRS 802 switches and Plaintiff Hufton was provided with a firmware update. Generac assured Plaintiff Hufton that these fixes would solve his production issues.

18.    However, the SnapRS 802 switches continue to cause other components in his Power System to shut off or malfunction, despite the installation of the alleged "fix" in the form of SnapRS 802 switches and a firmware update.

19.    Plaintiff Hufton's Power System continues to malfunction and does not

consistently or fully produce the solar energy it should when functioning at full capacity. Specifically, Plaintiff Hufton's Power System will turn off seemingly randomly and display the "PVRSS" lockout code, requiring a full system reset. Since receiving the firmware update, Plaintiff Hufton is unable to reset his system on his own. Instead, he must contact Generac and wait for Generac to remotely reset his system, a process which can take more than 24 hours.

20. To date, Plaintiff Hufton estimates that lost solar production has resulted in energy costs exceeding $1,000 over the course of two years.

21. When Plaintiff Hufton purchased the Power System, he believed he would receive a safe and dependable Power System that would reduce his use of electric power and provide him with a reliable source of backup power. At no point before Plaintiff Hufton purchased his Power System did Generac or his installer disclose to him that his Power System was not safe or dependable, or that it suffered from the Defect, which creates safety risks and dramatically reduces, or fails altogether to yield, solar production.

22. Plaintiff Hufton purchased his Power System containing the Defect as part of a transaction in which Generac and its certified installer did not disclose material facts related to the Power System's essential purpose—safe and dependable solar energy production. Plaintiff Hufton did not receive the benefit of his bargain. He purchased a Power System that is of a lesser standard, grade, and quality than represented, and he did not receive a Power System that met ordinary and reasonable

consumer expectations regarding safe and reliable operation. The Defect has significantly diminished the value and function of Plaintiff Hufton's Power System.

23.     Had Generac disclosed the Defect through its certified installers, in its marketing materials, or in its advertisements, Plaintiff Hufton and all other Class members would not have purchased the Power Systems or would have paid significantly less to do so.

**B.      Plaintiff McDonald**

24.     Plaintiff Aramie McDonald ("Plaintiff McDonald") is a resident of Mill Valley, California, who purchased a Generac Power System through Symmetric Energy, a Generac certified retailer, in January 2020. Plaintiff's Power System was fully installed in May 2020 and went online in September 2020. The total cost for her Power System was $59,970.37.

25.     Plaintiff McDonald's Power System included 25 solar panels, an inverter, 4 PV link optimizers, and 8 batteries. Upon information and belief, Plaintiff McDonald's Power Systems included 25 SnapRS 801 switches.

26.     Plaintiff McDonald's residential Power System was designed to reduce her energy costs and reliance on fossil fuel-powered utilities, as well as to support her home as a source of backup power in the case of a total power failure or outage.

27.     Shortly after installation, Plaintiff McDonald noticed that her system was underproducing solar energy and displaying error messages.

28.     Beginning in February 2022, Plaintiff McDonald's Power System began

displaying the PVRSS error message and production significantly decreased. In April of 2022, Generac told Plaintiff McDonald directly that her "PV links are not making power due to a detected issue with the rapid safety shutdown devices connected between each solar panel." Generac admitted that it had "identified the failure in this hardware, and we have released an updated version." However, Generac indicated it would not be able to replace the hardware in a timely manner due to "supply chain issues."

29. From April 10, 2022, through mid-July of 2022, Plaintiff McDonald's Power System generated *zero* solar production despite the sunny spring and summer conditions.

30. Plaintiff did not receive the replacement SnapRS hardware until July 5, 2022. Generac directed its partner, NovaSource, to replace her Power System's SnapRS units. However, NovaSource did not perform the hardware replacement for *another four months*, finally completing the replacement on November 17, 2022.

31. Following the replacement of the original SnapRS units, Plaintiff McDonald continued to receive PVRSS error messages, and the Power System's solar production continued to underperform.

32. Following a storm in January 2023, it became evident that a panel of Plaintiff McDonald's Power System was not properly secured by NovaSource during the SnapRS replacement. Plaintiff McDonald contacted Generac for system repair and support. Generac indicated that NovaSource would undertake the repair.

CLASS ACTION COMPLAINT

However, from January through April 26, 2023, Generac and NovaSource scheduled and re-scheduled the repair numerous times, finally completing the alleged repair *more than four months* later.

33. All the while, Plaintiff McDonald's Power System continued to display a PVRSS lockout error, causing significantly decreased solar production.

34. Plaintiff McDonald has spent a significant amount of time attempting to communicate with Generac and to schedule Generac service calls to resolve system issues.

35. To date, Plaintiff McDonald estimates that lost solar production has resulted in energy costs exceeding $1,400 in the last 12 months, and more over the last few years while the system has underperformed.

36. When Plaintiff McDonald purchased the Power System, she believed she would receive a safe and dependable Power System that would reduce her use of electric power and provide her with a reliable source of backup power. At no point before Plaintiff McDonald purchased her Power System did Generac or her installer disclose to her that her Power System was not safe or dependable, or that it suffered from the Defect, which creates safety risks and dramatically reduces or fails altogether to yield solar production.

37. Plaintiff purchased her Power System containing the Defect as part of a transaction in which Generac and its certified installer did not disclose material facts related to the Power System's essential purpose—safe and dependable solar energy

production. Plaintiff did not receive the benefit of her bargain. She purchased a Power System that is of a lesser standard, grade, and quality than represented, and she did not receive a Power System that met ordinary and reasonable consumer expectations regarding safe and reliable operation. The Defect has significantly diminished the value and function of Plaintiff's Power System.

38.     Had Generac disclosed the Defect through its certified installers, in its marketing materials, or in its advertisements, Plaintiff and all other Class members would not have purchased the Power Systems or would have paid significantly less to do so.

## C.     Defendants

39.     Defendant Generac Power Systems, Inc. is a Wisconsin corporation with a principal place of business located at S45W29290 Highway 59, Waukesha, WI 53189. Generac is registered to do business in this state and does business in this district in a systematic and continuous fashion through the design, manufacturing, and sale of home and business power solutions.

40.     Defendant Generac Holdings Inc. is a Delaware corporation with principal executive offices located at S45 W29290 Hwy 59, Waukesha, Wisconsin 53189. Generac's common stock trades on the NYSE under the ticker symbol "GNRC." Generac Holdings Inc. is a citizen of Delaware and Wisconsin.

# IV.    SUBSTANTIVE ALLEGATIONS

**A.    Generac Has More Than 64 Years of Experience Selling Residential Power Products.**

41.    Generac has been designing, manufacturing, selling, and marketing home power solutions since 1959.[1] From the start, Generac's main focus has been backup power generators. Generac now advertises itself as "the #1 manufacturer of home backup generators."

42.    No stranger to the importance of residential safety, Generac promises to "protect the things that power your life by providing quality, affordable power solutions."[2]

43.    Generac purports that it "manufactures the widest range of power products in the marketplace including portable, residential, commercial and industrial generators."[3]

44.    Beyond generators, Generac "provide[s] a broad product line of outdoor power equipment referred to as chore products, which are used in property maintenance applications for larger-acreage residences, commercial properties, municipalities, and farms. These products include trimmers, field and brush mowers, log splitters, stump grinders, chipper shredders, lawn and leaf vacuums, pressure washers and water pumps."[4]

---

[1] https://www.generac.com/about-us (last accessed May 17, 2023).

[2] *Id.*

[3] *Id.*

[4] https://investors.generac.com/static-files/8c798ee3-be57-443a-80f2-2afb258bb909 (last accessed May 17, 2023).

CLASS ACTION COMPLAINT

45.     Generac distributes products through independent residential dealers, industrial distributors and dealers, national and regional retailers, e-commerce partners, electrical/HVAC/solar wholesalers, solar installers, catalogs, equipment rental companies, and equipment distributors.[5]

46.     Installers and residential distributors can become a "Generac Partner" by completing training, certification, and onboarding provided by Generac (hereafter referred to as "certified installers.").[6]

47.     Generac also sells "direct to certain national and regional account customers, which include utilities, telecommunications providers and original equipment manufacturers, as well as to individual consumers or businesses who are the end users of [Generac's] products."[7]

48.     As of February 2023, Generac reports net sales of $4.6 billion, with 88% of those sales being domestic.[8]

49.     Since 2017, Generac has acquired at least 15 companies such as: Neurio in March 2019 ("The leading energy data company focused on metering technology and sophisticated analytics to optimize energy use"); Pika Energy in April 2019

---

[5] https://investors.generac.com/static-files/8c798ee3-be57-443a-80f2-2afb258bb909 (last accessed May 17, 2023).

[6] https://www.generac.com/resources-and-tools/ce-installer-resources/become-an-installer (last accessed May 17, 2023).

[7] https://investors.generac.com/static-files/8c798ee3-be57-443a-80f2-2afb258bb909 (last accessed May 17, 2023).

[8] https://investors.generac.com/static-files/2870e906-78b8-4563-a31e-0353590550f2 (last accessed May 17, 2023).

("Leading manufacturer of smart storage solutions and smart batteries"); Chillicon Power in July 2019 ("Designer and provider of grid-interactive microinverter and monitoring solutions for the solar market"); and Offgrid Energy in September 2021 ("Leading designer and manufacturer of industrial grade energy storage systems").[9]

50.     The acquisition of these companies represents a big shift in Generac's business towards "Clean Energy" and energy technology. In its 2021 annual report, Generac summarized its "significant investments" in "energy technology solutions" stating that "Generac has established itself as a credible leader in the rapidly growing residential clean energy market, focused on solar, battery storage and grid services applications."[10]

**B.     Generac's Solar Energy Systems.**

51.     Beginning with its 2019 acquisition of Pika Energy, Generac has worked to "develop[] a line of clean energy products marketed under the Generac brand and using the name PWRcell™."

52.     According to Generac, "PWRcell represents the next step in Generac's 60-year history of backup power technology leadership."[11]

53.     The PWRcell system manages, processes, stores, monitors, and provides

---

[9] https://investors.generac.com/static-files/2870e906-78b8-4563-a31e-0353590550f2 (last accessed May 17, 2023).

[10] https://investors.generac.com/static-files/e6ea7b98-227f-4c08-b205-5c895533173e (last accessed May 17, 2023).

[11] https://www.generac.com/all-products/clean-energy/pwrcell (last accessed May 17, 2023).

electricity generated through solar panels. The PWRcell system includes 1 Inverter, 1 Battery storage cabinet, 3 Lithium-ion battery modules, and "pairs with solar panels from most manufacturers."[12]



54.     A single solar cell or a "PV" (Photovoltaic), can be combined into a module, and several modules can be arranged into a panel or array. When the sun shines onto a solar panel, energy from the sunlight is absorbed by the PV cells in the panel. This energy creates electrical charges that move in response to an internal electrical field in the cell, causing electricity to flow.[13]

---

[12] *Id.*; Image source:
https://www.generac.com/generaccorporate/media/library/content/clean%20energy/pwrcell_consumerbrochu re_202212_digital.pdf?ext=.pdf (last accessed May 17, 2023).

[13] https://www.energy.gov/eere/solar/how-does-solar-work#:~:text=When%20the%20sun%20shines%20onto,cell%2C%20causing%20electricity%20to%20flow. (last accessed May 17, 2023).



Source: Solar Energy Center.[14]

55.     Generac touts that "each component from the batteries to the inverter, down to the rapid shutdown device and solar array performance optimizers, are designed by Generac to work seamlessly together, making PWRcell easier and faster to install."[15]

56.     The modular "flexible design" of the PWRcell system allows homeowners to arrange their system in various groupings of solar panels based on their roof design or their power needs.[16]

---

[14] available at https://energyresearch.ucf.edu/consumer/solar-technologies/solar-electricity-basics/cells-modules-panels-and-arrays/#:~:text=Photovoltaic%20panels%20include%20one%20or,of%20PV%20modules%20and%20panels (last accessed May 17, 2023).

[15]
https://www.generac.com/generaccorporate/media/library/content/clean%20energy/pwrcell_consumerbrochure_202212_digital.pdf?ext=.pdf (last accessed May 17, 2023).

[16]
https://www.generac.com/generaccorporate/media/library/content/clean%20energy/pwrcell_consumerbrochure_202212_digital.pdf?ext=.pdf (last accessed May 17, 2023).



57.    The below diagram illustrates how the PWRcell Power System is designed to fit a home:

*See* PWRcell Brochure, attached as Exhibit A.

58.    Some of the most crucial components in the PWRcell Power Systems are the SnapRS and PV Link.

59.    The PV Link, or the "Optimizer," is "the simple solar optimizer for quick

installation and long-lasting performance."[17] The purpose of the optimizer is to connect

solar panel arrays to each PV Link to overcome shading and challenging roof lines.



*See* Exhibit A at 9.

60. Originally, PWRcell Power Systems included the SnapRS 801 switch.

The SnapRS, or the "Rapid Shutdown Device" is a critical safety mechanism installed

between each PV module allowing rapid shutdown initiated via the inverter or a remote

shutdown switch.



*See* Exhibit A at 9.

61. Rapid shutdown is required by the National Electrical Code (NEC) as a

way to de-energize a residential solar panel system.

62. As explained by one blog,

---

[17] PV Link_A00000528162 Brochure, attached as Exhibit B.

CLASS ACTION COMPLAINT

"The National Fire Protection Association (NFPA) wrote rapid shutdown requirements into the NEC in an effort to keep first responders safe. Hopefully, your home never catches on fire and you don't even have to worry about rapid shutdown functionality – but if it does, firefighters can use rapid shutdown solutions to de-energize your solar panel system just in case they need to go up on your roof. Surprisingly, simply turning off a solar inverter doesn't always do this on its own: with some inverter setups, wires and circuits can remain energized even if the inverter is turned off, increasing the risk of shock for the firefighters working on top of your roof or in your attic. A disconnect switch that enables rapid shutdown allows firefighters to physically flip a switch to reduce the electrical voltage of your solar panel system to safe levels in less than a minute."[18]

63.     Together, the PV Link and SnapRS components provide "Instant Rapid Shutdown Compliance." According to Generac, "[w]hen signaled by the inverter, SnapRS units break the PV circuit, reducing array voltage to <80V in seconds."[19]



*See* Exhibit C.

64.     According to Generac, the SnapRS "meets [NEC] rapid shutdown

---

[18] https://news.energysage.com/rapid-shutdown-overview/ (last accessed May 17, 2023).

[19] SnapRS 801 Brochure, attached as Exhibit C.

requirements" because a SnapRS is installed between each PV module to protect against electrical surges.

65.     Generac's SnapRS devices are supposed to remain in either an "on" or "off" state for purposes of quickly reducing solar panel voltage.

66.     Rather than remaining in an "on" or "off" condition, Generac's SnapRS units are defective because they become overactive and turn on and off repeatedly. The overactivity in the SnapRS unit causes them to overheat, melt, char, or explode. Overheating can lead to fire and, upon information and belief, has caused fires and other potential hazards to Generac customers' homes.

67.     In addition, SnapRS failures can cause the Power System to experience a "PVRSS Lockout" error, which effectively powers down the entire PV array until resolved. A PVRSS Lockout occurs when the inverter detects a malfunctioning or overheating SnapRS between the solar panels. This can cause the Power System to go into "lock out" mode, shutting down the entire Power System or otherwise dramatically reducing its production.

68.     Generac readily admits that a single PVRSS lockout can paralyze a Power System and requires direct inspection by Generac. Specifically, Generac warns consumers that where "PVRSS Lockout error state is present, contact an authorized service provider to perform a visual inspection of all SnapRS devices, the PV array, and conductors. System owners should not attempt to repair or inspect any Generac equipment on their own. Do not reset the error without first having the array inspected

and any issues corrected."[20]

69.    Also alarming, Generac customers have reported widespread delays between the time they alerted Generac to the error code, and the time that Generac or its certified partners are able to physically inspect the Power Systems.

70.    This large-scale failure to provide customer service has only compounded the impact of the Defect, leaving customers without use of their Power Systems over long periods of time.

## C.    Generac's Limited Warranties.

71.    Generac's written warranty for its SnapRS units is for 25 years and other System components are covered for 10 years. Generac further warrants that its PWRcell products will be free from defects and that it will cover parts, labor, and travel for its defective equipment.

| Product | Model Number | Warranty Period | Coverage |
|---------|-------------|-----------------|----------|
| Generac PWRcell Battery Cabinet | APKE00007 APKE00028 | 10 years | Parts, Labor, and Limited Travel |
| Generac PWRcell Battery Modules | A0000391219 G0080040 G0080001 G0080003 G0080005 | 10 years or 7.56MWh of energy throughput per module, whichever comes first (i.e. six module system carries a warranty of 10 years or 45.36 MWh of total energy throughput). Capacity retention guarantee at the end of the warranty period: At least 70% of nameplate rating. | |
| Generac PWRcell Inverter | APKE00014 APKE00013 XVT076A03 XVT114G03 | 10 years | |
| PWRmanager™ | G0080090 | 10 years | |
| PV Link™ | APKE00010 | 25 years | |
| SnapRS™ | APKE00011 RS801a RS802 | 25 years | |

---

[20] https://www.generac.com/service-support/clean-energy-homeowner-resources/find-a-service-provider (last accessed May 17, 2023).

72.     Despite this explicit warranty, Generac's Power Systems are defective because SnapRS units become overactive, overheat, melt, and/or malfunction.

**D.     Generac had actual or constructive notice of the SnapRS Defect.**

73.     Since at least April 2021, Generac has been aware of reports that SnapRS 801 units were melting and hindering production for customers.[21]

74.     In August 2021, a homeowner with a Generac power system experienced a home fire caused by the overheating of the SnapRS 801.[22]

75.     In August 2021, Generac instituted the firmware update. Notably, only Power Systems users whose systems were connected to the internet received the firmware update, meaning that a significant number of Power System users are unable to access the supposed "fix."

76.     That same month, Generac assured one of its authorized retailers (Pink Energy) that a firmware update would fix the Defect. Despite this assurance, Power System owners experienced additional malfunctions that caused portions of customer systems to prevent potential thermal events.[23]

77.     In or around late 2021, Generac released a next generation SnapRS, called the SnapRS 801A, that was supposed to fix the overheating malfunction in its prior

---

[21] https://pv-magazine-usa.com/2022/08/11/pink-energy-files-lawsuit-against-generac/ (last accessed May 17, 2023).

[22] https://pv-magazine-usa.com/2022/08/11/pink-energy-files-lawsuit-against-generac/ (last accessed May 17, 2023).

[23] https://www.manufacturing.net/labor/news/22444874/pink-energy-lays-off-500-blames-faulty-generac-solar-equipment (last accessed May 17, 2023).

SnapRS 801 model. But the 801A suffered from the same or similar defects as its SnapRS 801, including overheating and PVRSS lockouts.

78.     Generac also knew that the firmware update, though allegedly a fix for the SnapRS 801 issues, had adverse effects that could still shutdown the entire PWRcell System. Generac knew that the SnapRS 801A suffered from the same defects as the SnapRS 801 and that it had failed to correct the dangerous Defect that the update was purportedly supposed to rectify.

79.     As recently as June 2022, Generac acknowledged a more than 40% failure rate in the SnapRS units but has not issued a national recall for the part.[24]

80.     During the Summer of 2022, certified installers conducted large scale replacements of the defective SnapRS 801 components, removing damaged SnapRS 801 units as well as SnapRS 801A units that showed the same defects as the SnapRS 801 model.

81.     Around June 2022, Generac admitted that replacing the 801 and 801A Snap models was necessary and announced the release of the SnapRS 802 component which Generac described as being "designed and engineered to the highest safety and reliability standards," adding that the 802 Snap model "ha[d] been tested in extreme heat and corrosive moisture conditions with exceptional results."[25]

---

[24] https://www.manufacturing.net/labor/news/22444874/pink-energy-lays-off-500-blames-faulty-generac-solar-equipment (last accessed May 17, 2023).

[25] https://www.generac.com/getmedia/ac5d76ce-5638-49bb-9584-e60058b7c11a/SnapRS-802-External-Installer-Presentation;;.aspx (last accessed May 17, 2023).

CLASS ACTION COMPLAINT

82.     Generac issued letters to specific customers, certified installers, and other partners promising that the SnapRS 802 was a true fix, while at the same time failed to publicly disclose the defective nature of the SnapRS 801 and 801A models.[26]

83.     Examples of Power System owners' dissatisfaction and tales of production issues are evident all over messaging boards such as Reddit and the Better Business Bureau.

84.     For example, Reddit User sephyn77 posted in October 2022:

I've had PV link errors 3 times. Pink replaced the SnapRS' twice. This third time they insist Generac is responsible. I call Generac, they tell me a company called NovaSource will schedule something. It's been 3 weeks of me calling and emailing NovaSource with absolutely no response or ability to schedule a replacement. Generac will no longer answer calls either. They try to fwd you to NovaSource (who won't respond) or send you to call waiting for hours on end. It's such a huge mess. And I've been running at 20% capacity for 7 weeks total now. Probably 3 months of total downtime since I had the system installed 15 months ago.[27]

85.     Reddit user threedog4ever posted in August 2022:

Hello again. My installer came on Thursday with two Generac people. One bad PV link or at least one PV link not sending power to the inverter; it had been nonfunctioning for about a month.

The Generac people had no explanation for why this keeps happening. The most-frequently said word they said to me was "technology" - as in, this technology is so new! So advanced! What do you expect? *It's the technology.* Ok, I said, well then how come you keep selling it if it's so unreliable?
No answer. There is no answer to be found when speaking to anyone, the installer or Generac.

---

[26] https://pv-magazine-usa.com/2022/08/11/pink-energy-files-lawsuit-against-generac/ (last accessed May 17, 2023).

[27] https://www.reddit.com/r/solar/comments/xd9wdn/screwed_by_powerhomesolar_generac_and_goodleap/ (last accessed May 17, 2023).

Anybody out there got an answer?

I WANT ANSWERS DADGUMMIT!!!

86.  User threedog4ever provided an update in November 2022:

Mine have all been replaced at least once since install was completed 7/9/21. Sierra Pacific Home and Comfort did the install. All Generac components plus SilFab panels.

There are many of us still waiting for Generac to get its act together. Generac's faulty equipment is apparently at least one major reason for Pink's closure.

My own installer has admitted they are losing money because of this issue. Yes, SnapRS is one big problem but there have also been bad battery cabinets, multiple blown fuse issues and fried panels. Plus melted power cores! I've had each go wrong except the power core issue.[28]

87.  Around the same time, Reddit user decaf-iced-mocha posted:

We've had our all SnapRS devices changed due to failure. We've had the system about 10 months and it's only worked for three.

88.  Reddit User Due_Jump_9046 posted in September 2022:

Received an email yesterday from my installer for my partially installed Generac system that isn't fully functional yet. They are discontinuing their relationship with Generac due their problems within the industry. Not sure what is to become of my system. Don't know if they remove all the Generac components and replace with something else or try to finish the Generac installation and get it working up to capacity. I am 5 months into this endeavor.[29]

89.  Generac, which relies heavily on third party certified installers and

[28] https://www.reddit.com/r/PwrCellOwners/comments/yikqg8/snaprs_generac/ (last accessed May 17, 2023).

[29] https://www.reddit.com/r/solar/comments/xd9wdn/screwed_by_powerhomesolar_generac_and_goodleap/ (last accessed May 17, 2023).

partners, has not been able to keep up with the constant flood of Power System owners experiencing system failure or production issues caused by the Defect.

90.     The impact of the Defect has been so great, that one of Generac's biggest certified installers, Pink Energy, was forced to close operations and eventually file for bankruptcy.[30] Pink Energy reported receiving more than 30,000 inbound customer calls per month, many times higher than its historical level of only 800 calls per month, as a result of the Defect.[31] After replacing more than 50,000 SnapRS units, Pink Energy ended its relationship with Generac.[32] Still, the financial burden caused by the Defect was too great for Pink Energy to bear.

**E.     Generac still has not offered a *bona fide* remedy for the SnapRS 801 Defect.**

91.     Despite the clear danger posed by the Defect, Generac has not made any large-scale effort to replace the defective SnapRS 801 components or cure the issues arising with the firmware update, and as a result, the Defect continues to manifest.

92.     Despite its recommendation that Power System owners receive the firmware update, the Defect persists.

93.     Following the firmware rollout in August 2021, Generac failed to disclose that the Defect persisted despite any firmware update or that the firmware update could

---

[30]  https://www.designdevelopmenttoday.com/industries/energy/news/22444874/pink-energy-lays-off-500-blames-faulty-generac-solar-equipment (last accessed May 17, 2023).

[31] *Id.*

[32] *Id.*

Case 2:23-cv-00771-LA     Filed 05/19/23     Page 25 of 53     Document 1

result in shutdowns or reduced power output for its customers' Power Systems. Eventually, Generac's CEO, Aaron Jagdfeld, admitted that the firmware update was only an "interim solution" until a third-generation SnapRS part arrived.[33]

94.    Upon information and belief, in May of 2022 Generac issued a letter to Pink Energy customers admitting that it experienced issues with its SnapRS 801 and 801A units, and advising that it had developed a new unit, the SnapRS 802, that would ostensibly fix the issues.

95.    However, reports indicate that Generac did not make enough SnapRS 802 units available to replace existing 801 and 801A units.[34]

96.    For even those Power System owners who have replacement SnapRS 802 components and the firmware update, production issues persist. For example, Plaintiff has experienced a dramatic spike in issues with solar production or Power System function.

97.    Many Power System owners continue to report a "PVRSS Lockout" system error, sending their Power System into "lockout mode" until the lockout is cleared.

98.    Despite the promised fixes, Generac's Power Systems continue to malfunction and fail to produce full solar production. The Defect requires Power

---

[33] https://www.designdevelopmenttoday.com/industries/energy/news/22444874/pink-energy-lays-off-500-blames-faulty-generac-solar-equipment (last accessed May 17, 2022).

[34] https://www.wjhl.com/news/local/one-problem-after-another-two-years-in-a-bankrupt-company-and-no-fix-in-sight-for-home-solar-customer/ (last accessed May 17, 2022).

System owners to spend significant time on the phone with Generac or its certified installers, attempting to organize the service visits required to resolve a PVRSS lockout or diagnose the Defect.

99. Generac continues to ignore the issue by refusing to issue a recall or provide a global fix. As a result, Power System owners incur electric energy costs, lose savings reasonably expected by consumers when purchasing their Generac Power Systems, and are constantly at risk of system malfunction and even fire.

## V.  TOLLING OF STATUTES OF LIMITATIONS

100. Any applicable statute(s) of limitations have been tolled by Generac's knowing and active concealment and denial of the facts alleged herein. Plaintiffs and the members of the Class could not have reasonably discovered the true nature of the Power Systems because Defendants concealed it. Plaintiffs' claims were thus tolled pursuant to the discovery rule, for fraudulent concealment, and for estoppel.

## A.  Discovery Rule

101. The causes of action alleged herein did not accrue until Plaintiffs and Class members discovered that their Power Systems contained the Defect.

102. As alleged above, Class members had no way of knowing about the Defect in their Power Systems. Defendants concealed their knowledge of the Defect while they continued to market and sell the Power Systems as safe, high-quality, and reliable solar Power Systems. To this day, Generac fails to disclose the full extent of the Defect and maintains that the putative "remedies" offered by the SnapRS 801A, SnapRS 802,

or firmware updates correct the Defect.

103.   Within any applicable statutes of limitation, Class members could not have discovered through the exercise of reasonable diligence that Defendants were concealing the conduct complained of herein and misrepresenting the true qualities of the Power Systems. Class members acted reasonably and diligently in attempting to find the source of the Defect.

104.   Until the Defect manifested, Class members did not know facts that would have caused a reasonable person to suspect that there was a Defect affecting their Power Systems and an ordinary person would be unable to appreciate that the Power System was defective. Indeed, even after Generac knew that the Power Systems contained the Defect, Generac denied responsibility and stated that the putative remedies offered by the SnapRS 801A, SnapRS 802, or firmware updates alleviate the risks created by the Defect. As explained above, there are reports that squarely contradict the viability of Generac's putative remedies.

105.   For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to the claims in this litigation.

**B.      Fraudulent Concealment**

106.   As the manufacturers, distributors, sellers, and/or warrantors of the Power Systems, Generac was under a continuous duty to disclose to Class members the existence of the Defect found in the Power Systems.

107.   Generac was and remains under a continuing duty to disclose to Plaintiffs

CLASS ACTION COMPLAINT

and the members of the Class the true character, quality, and nature of the Power Systems, that the Defect found in the Power System causes total or partial production failure or even fires.

108.   Generac recklessly disregarded the true nature, quality, and character of the Power Systems, by failing to fully disclose the existence of the Defect or recall the SnapRS 801 components.

109.   Due to Defendants' concealment throughout the time period relevant to this action, all applicable statutes of limitation have been tolled.

110.   Instead of publicly disclosing the Defect in the Power Systems, Defendants kept owners and installers in the dark about the Defect present in the Power Systems, which creates unreasonable safety risks to homeowners. To this day, Defendants have knowingly or recklessly failed to disclose the full extent of the Defect and have failed to offer adequate remedies for the Defect.

111.   Absent manifestation of the Defect, Class members were not at fault for failing to discover the existence of the Defect present in their Power Systems.

112.   Until the Defect manifested in his Power System, Plaintiffs had no actual or presumptive knowledge of facts sufficient to put them on inquiry notice of the existence of the Defect.

**C.    Estoppel**

113.   Generac was, and is, under a continuous duty to disclose to Plaintiffs and Class members the true character, quality, and nature of the Power Systems.

114. Generac failed to disclose the existence of the Defect and actively concealed the true character, quality, and nature of the Power Systems while knowingly making representations about the safety, quality, and reliability of the Power Systems. Plaintiffs and Class members reasonably relied upon Generac's knowing and affirmative representations and/or active concealment of these facts. Based on the foregoing, Generac is estopped from relying on any statutes of limitation in defense of this action.

## VI.    CLASS ALLEGATIONS

115. Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

116. Plaintiffs seeks to represent a class ("Nationwide Class") defined as:

All persons or entities in the United States who purchased or own a Generac Power System containing a SnapRS component.

117. In addition, and in the alternative to the Nationwide Class, Plaintiff Hufton seeks to represent a class ("Oregon Class"), defined as:

All persons or entities in the United States who purchased or own a Generac Power System containing a SnapRS component, in the state of Oregon.

118. In addition, and in the alternative to the Nationwide Class, Plaintiff McDonald seeks to represent a class ("California Class"), defined as:

All persons or entities in the United States who purchased or own a Generac Power System containing a SnapRS component, in the state of California.

119. The Nationwide Class, Oregon Class, and California Class are collectively referred to herein as "the Class".

120. Excluded from the Class are Defendants, their affiliates, employees, officers and directors, persons or entities that purchased the Power Systems for resale, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change, or expand the Class definitions based on discovery and further investigation.

121. <u>Numerosity</u>: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis alleges, that at least thousands of Power Systems have been sold in the United States.

122. <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to:

    a. Whether Defendants engaged in the conduct alleged herein;

    b. Whether Defendants designed, advertised, marketed, distributed, sold, or otherwise placed the defective Power Systems into the stream of commerce in the United States;

    c. Whether the Power Systems were sold with the Defect;

d. Whether Defendants knew of the SnapRS 801, SnapRS 801A, and subsequent firmware update problems but failed to disclose the problems and their consequences to their customers;

e. When Defendants discovered the Defects in the Power Systems, and what, if anything, they did in response;

f. Whether Defendants should be required to disclose the existence of the Defect;

g. Whether Defendants' actions violate express and implied warranties;

h. Whether Plaintiffs and Class Members overpaid for their Power Systems; and

i. Whether Plaintiffs and Class Members experienced out-of-pocket losses as a result of the defective Power Systems, and if so, how much.

123. Typicality: Plaintiffs' claims are typical of the claims of the Class because Plaintiffs purchased a Power System with the same Defect as did each member of the Class. Furthermore, Plaintiffs and all Members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendants' wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class Members.

124. Adequacy: Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class that they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation,

and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

125. <u>Superiority</u>: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and Members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for Members of the Class individually to redress effectively the wrongs done to them. Even if the Members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendants' sales records.

126. Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

# VII. CAUSES OF ACTION

## FIRST CAUSE OF ACTION
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301, et seq.)
### (On behalf of the Nationwide Class)

127. Plaintiffs reallege and incorporate by reference all preceding allegations as though set forth herein.

128. Plaintiffs bring this claim individually and on behalf of the other members of the Nationwide Class.

129. This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332(a)-(d).

130. The Power Systems are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). Plaintiffs and Nationwide Class members are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranties.

131. Generac is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

132. 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

133. Generac provided Plaintiffs and Nationwide Class members with an implied warranty of merchantability in connection with the purchase of their Power System that is a "written warranty" and/or "implied warranty" within the meaning of the Magnuson- Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the written and/or

implied warranty of merchantability, Generac warranted that the Power Systems were fit for their ordinary purpose and would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

134. Generac breached its implied warranties, as described herein, and is therefore liable to Plaintiffs under 15 U.S.C. § 2310(d)(1). Without limitation, the Power Systems share a common defect in that they are all equipped with a defective SnapRS component that malfunctions by overheating or repeatedly turning off, decreasing or stopping production altogether and even creating a risk of fire or property damage to owners of the Power Systems. The Defect rendered the Power Systems unmerchantable and unfit for their ordinary use when they were sold, and at all times thereafter.

135. As discussed herein, on information and belief, Generac knew or should have known about the Defect based on, *inter alia*, certified installer reports, warranty claims, and customer service complaints. Generac omitted information about the Defect and its consequences from Plaintiffs and Class members, misrepresented the qualities of the Power Systems, and has failed to provide a *bone fide* remedy for the Defect.

136. Any effort by Generac to limit the implied warranties in a manner that would exclude coverage of the Power Systems is unconscionable, and any such effort to disclaim or otherwise limit such liability is null and void.

137. Any limitations Generac might seek to impose on its warranties are

substantively and procedurally unconscionable. Generac knew or should have known that the Power Systems were defective and that the Power Systems could fail, cause a dramatic decrease in solar production, or even cause fire or property damage when used as intended long before Plaintiffs and Class members knew or should have known. Generac failed to disclose this defect to Plaintiffs and Class members. Thus, enforcement of the durational limitations on the warranties is harsh and would shock the conscience.

138. Plaintiffs and Class Members have privity of contract with Generac through their purchase of Power Systems through Generac agents, specifically through certified installers, and through express written warranties that Generac issued to its customers. Generac's warranties accompanied the Power Systems and were intended to benefit the ultimate consumers of the Power Systems.

139. Under 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and is not required to give Generac notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs under Rule 23 of the Federal Rules of Civil Procedure.

140. Under the circumstances described in the complaint, it would be unnecessary and futile to afford Generac a reasonable opportunity to cure its breach of warranties. Generac has known, since at least April 2021, that the SnapRS Defect was present, yet continued to misrepresent or omit crucial information about the danger of the Defect.

141.  The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed based on all claims to be determined in this lawsuit. Plaintiffs, individually and on behalf of all other Nationwide Class members, seek all damages permitted by law, in an amount to be proven at trial. In addition, under 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and Nationwide Class members in connection with the commencement and prosecution of this action.

142.  Plaintiffs also seek the establishment of a Generac-funded program for Plaintiffs and Nationwide Class members to recover out-of-pocket costs incurred in attempting to rectify and mitigate the effects of the Defect in their Power Systems.

**SECOND CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
(On Behalf of the Nationwide Class, or in the alternative on Behalf of the Oregon Class)

143.  Plaintiffs reallege and incorporate by reference all preceding allegations as though set forth fully herein.

144.  Plaintiffs bring this claim on behalf of themselves and on behalf of the Class.

145.  Defendants are liable for breach of warranty under the law of warranties as expressed in the Uniform Commercial Code. Generac expressly warranted that, as

designed, manufactured, installed, and sold, the Power Systems were fit for the ordinary purposes for which the Power Systems were to be used.

146.   Generac's warranty was uniform or substantially uniform as to product representations among the Power Systems sold.

147.   Generac's written warranty to Plaintiffs and the Class specifically provides for SnapRS coverage for 25 years and 10 years of coverage for other PWRcell components, warrants that its PWRcell products are defect free, and that it will cover parts, labor, and travel for its defective equipment.

148.   Defendants expressly warranted that the Power Systems were designed, manufactured, installed and sold that they were safe and would not expose Plaintiffs to the risk of harm. Generac's express warranty was breached, and such breach of warranty was a producing cause of Plaintiffs' damages.

149.   Plaintiffs and Class Members have privity of contract with Generac through their purchase of Power Systems through Generac agents, specifically through certified installers, and through express written warranties that Generac issued to its customers. Generac's warranties accompanied the Power Systems and were intended to benefit the ultimate consumers of the Power Systems.

150.   Despite these explicit warranty promises, Generac has failed to properly repair, replace, or otherwise issue a refund for the defective Power Systems.

151.   Generac failed to comply with the terms of the express warranty provided to Plaintiffs and Class members, by failing and/or refusing to repair or replace the

subject defective Power Systems under the warranty as described herein.

152.    Generac's failures to replace or to repair or replace the defective Power Systems during the warranty period in order to bring Power Systems into conformity with the express warranties, deprived Plaintiffs and Class Members of their rights guaranteed under the express warranties offered by Generac.

### THIRD CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY – SONG BEVERLY CONSUMER WARRANTIES ACT
(CAL. CIV. CODE §§ 1792, 1791.1, et seq.).
(On behalf of Plaintiff McDonald and the California Class)

153.    Plaintiff McDonald incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

154.    Plaintiff McDonald brings this claim on behalf of herself and the California Class against Defendants.

155.    At all relevant times hereto, Defendants were the manufacturer, distributor, warrantor, and/or seller of the Power Systems. Defendants knew or should have known of the specific use for which the Power Systems were purchased.

156.    Defendants provided Plaintiff McDonald and the Class Members with an implied warranty that the Power Systems, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. The Power Systems, however, are not fit for their ordinary purpose because, inter alia, the Power Systems suffered from an inherent defect at the time of sale that causes Power System failure and can lead to catastrophic fire.

157. The Power Systems are not fit for the purpose of providing safe and reliable solar energy because of the defect.

158. Defendants impliedly warranted that the Power Systems were of merchantable quality and fit for such use. This implied warranty included, inter alia, the following: (i) a warranty that the Power Systems manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for solar energy production and would not prematurely and catastrophically fail; and (ii) a warranty that the Power Systems would be fit for their intended use—providing safe and reliable solar energy—while the Power Systems were installed.

159. Contrary to the applicable implied warranties, the Power Systems, viz. their SnapRS components at the time of sale and thereafter were not fit for their ordinary and intended purpose. Instead, the Power Systems are defective, including, but not limited to, the SnapRS Defect that causes repeated power loss, eventually melting or deforming the SnapRS component and causing total system failure

160. Plaintiff McDonald and the other Class Members have had sufficient direct dealings with either Defendants or their agents (e.g., retailers, dealers, installers, Consumer Affairs, and technical support) to establish privity of contract between Defendants on one hand, and Plaintiff McDonald and each of the other Class Members on the other hand. Nonetheless, privity is not required here because Plaintiff McDonald and each of the other Class Members are intended third-party beneficiaries of contracts between Defendants and their certified installers or partners,

and specifically, of Defendants' implied warranties. The certified installers or partners were not intended to be the ultimate consumers of the Power Systems and have no rights under the warranty agreements provided with the Power Systems; the warranty agreements were designed for and intended to benefit the consumers only.

161.  Defendants' actions, as complained of herein, breached the implied warranty that the Power Systems were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

162.  Pursuant to Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiff McDonald and the other Class Members are entitled to damages and other legal and equitable relief, including, an adequate remedy for the Defect, or at their election, the purchase price of their Power Systems, lost savings, or the overpayment or diminution in value of their Power Systems.

163.  Pursuant to Cal. Civ. Code § 1794, Plaintiff McDonald and the other Class Members are entitled to costs and attorneys' fees.

### FOURTH CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY
(UCC § 2-314)
(On Behalf of the Nationwide Class)

164.  Plaintiffs reallege and incorporate by reference all preceding allegations as though set forth fully herein.

165.  Plaintiffs bring this claim individually and on behalf of the other members of the Nationwide Class for breach of implied warranty pursuant to Uniform Commercial Code ("UCC") § 2-314.

166. Each Defendant is a "merchant," and a "seller" of Power Systems under the UCC.

167. A warranty that the defective Power Systems were in merchantable condition was implied by law, and the defective Power Systems were bought and sold subject to an implied warranty of merchantability.

168. By placing the defective Power Systems in the stream of commerce, Defendants impliedly warranted that the defective Power Systems are safe, and that all claims in their advertising and marketing of the defective Power Systems were true.

169. The defective Power Systems did not comply with the implied warranty of merchantability because, at the time of sale or lease and at all times thereafter, the Power Systems were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which the Power Systems were used. Specifically, the Power Systems all contain the same defective SnapRS parts that cause Power System failure and can lead to catastrophic fire.

170. Plaintiffs and Class Members suffered damages due to the defective nature of the Power Systems and Defendants' breach of the warranty of merchantability.

171. At all times that Defendants warranted and sold the defective Power Systems, they knew or should have known that their warranties were false, and yet they did not disclose the truth, or stop manufacturing or selling the defective Power Systems, and instead continued to issue false warranties, and continued to insist the products

CLASS ACTION COMPLAINT

were safe. The defective Power Systems were defective when Defendants delivered them direct to customers.

172. Plaintiffs' and Class members' acquisition of the defective Power Systems directly from Defendants or through their agents (certified installers or other partners) suffices to create privity of contract between Plaintiffs and all other members of the Class.

173. Defendants each had notice of their breach as alleged herein.

174. As a direct and proximate result of Generac's breach of implied warranties of merchantability, Plaintiffs and the other Class members are entitled to damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
## VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
(CAL. BUS. & PROF. CODE § 17200)
(On behalf of Plaintiff McDonald and the California Class)

175. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

176. Plaintiff McDonald brings this claim on behalf of herself and on behalf of the California Class.

177. The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

178. Defendants have engaged in unfair competition and unfair, unlawful or

fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiffs and the Class Members that the Power Systems suffer from Defect (and the costs, safety risks, and diminished value of the Power Systems as a result of these problems). Defendants should have disclosed this information because they were in a superior position to know the true facts related to the defect, and Plaintiffs and Class Members could not reasonably be expected to learn or discover the true facts related to the defect.

179.   The defectively designed quick release skewers in conjunction with disc brakes, as well as the ineffective fork design and trail number constitute a safety issue that triggered Defendants' duty to disclose the safety issue to consumers.

180.   These acts and practices have deceived Plaintiff McDonald and are likely to deceive the public. In failing to disclose the defect and suppressing other material facts from Plaintiff McDonald and the Class Members, Defendants breached their duties to disclose these facts, violated the UCL, and caused injuries to Plaintiff McDonald and the Class Members. The omissions and acts of concealment by Defendants pertained to information that was material to Plaintiff McDonald and the Class Members, as it would have been to all reasonable consumers.

181.   The injuries suffered by Plaintiff McDonald and the Class Members are not greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff McDonald and the Class Members should have reasonably avoided.

182. Defendants' acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 *et seq*., and California Commercial Code § 2313.

183. Plaintiff McDonald seeks to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendants, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

**SIXTH CAUSE OF ACTION**
**VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW**
(Cal. Bus. & Prof. Code § 17500, et seq.)
(On behalf of Plaintiff McDonald and the California Class)

184. Plaintiff McDonald and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

185. Plaintiff McDonald brings this claim on behalf of herself and on behalf of the California Class.

186. California Business & Professions Code § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

187.   Defendants caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers, including Plaintiff McDonald and the other Class Members.

188.   Defendants have violated section 17500 because the misrepresentations and omissions regarding the safety, reliability, and functionality of their Power Systems as set forth in this Complaint were material and likely to deceive a reasonable consumer.

189.   Plaintiff McDonald and the other Class Members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices. In purchasing their Power Systems, Plaintiff McDonald and the other Class Members relied on the misrepresentations and/or omissions of Defendants with respect to the safety and reliability of the Power Systems. Defendants' representations were untrue because the Power Systems are distributed with defective SnapRS components that can overheat, melt, or catch on fire and which cause the Power Systems to malfunction. Had Plaintiff McDonald and the other Class Members known this, they would not have purchased their Power Systems and/or paid as much for them. Accordingly, Plaintiff and the other Class Members overpaid for their Power Systems and did not receive the benefit of their bargain.

190.   All of the wrongful conduct alleged herein occurred, and continues to

occur, in the conduct of Defendants' businesses. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide.

Plaintiff McDonald, individually and on behalf of the other Class Members, requests that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiff McDonald and the other Class Members any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

**SEVENTH CAUSE OF ACTION**
**VIOLATION OF THE OREGON UNFAIR TRADE PRACTICES ACT**
(OR. REV. STAT. § 646.605, et seq.)
(On Behalf of Plaintiff Hufton and the Oregon Class)

191.   Plaintiff Hufton realleges and incorporates by reference all preceding allegations as though set forth fully herein.

192.   Plaintiff Hufton brings this cause of action on behalf of himself and on behalf of all similarly situated members of the Oregon Class.

193.   Plaintiff Hufton and the Oregon Class members are "persons" within the meaning of Or. Rev. Stat. § 646.605(4).

194.   Generac is engaged in "trade" or "commerce" within the meaning of Or. Rev. Stat. § 646.605(8).

195.   The Oregon Unfair Trade Practices Act ("Oregon UTPA") prohibits "unfair or deceptive acts conduct in trade or commerce…." Or. Rev. Stat. § 646.608(1).

196. The acts, practices, misrepresentations and omissions by Defendants described above, and Defendants' dissemination of deceptive and misleading advertising and marketing materials in connection therewith, occurring in the course of conduct involving trade or commerce, constitute unfair methods of competition and unfair or deceptive acts or practices within the meaning of the Oregon UTPA.

197. Defendants' acts and practices created a likelihood of confusion or of misunderstanding and misled, deceived, or damaged Plaintiff Hufton and members of the Class in connection with the sale or advertisement of defective Power Systems. Defendants' conduct also constituted the use or employment of deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged in violation of the Oregon UTPA.

198. Specifically, Generac violated the Oregon UTPA by: (1) representing that the Power Systems have characteristics, uses, benefits, and qualities which they do not have; (2) representing that the Power Systems are of a particular standard, quality, and grade when they are not; (3) advertising the Power Systems with the intent not to sell them as advertised; and (4) failing to disclose information concerning the Power Systems with the intent to induce consumers to purchase Power Systems.

199. Generac knew or should have known that its conduct violated the Oregon UTPA.

200. Plaintiff Hufton and the Oregon Class embers suffered ascertainable loss and actual damages as a direct and proximate result of Generac's misrepresentations and concealment of and failure to disclose material information about the Defect. Plaintiff Hufton and the Oregon Class members would not have purchased the Power Systems had the Defect been disclosed.

201. Pursuant to Or. Rev. Stat. § 646.638, Plaintiff Hufton, on behalf of himself and the other Oregon Class Members, seeks an order enjoining Generac's unfair and/or deceptive acts or practices, damages, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Oregon UTPA.

### EIGHTH CAUSE OF ACTION
### UNJUST ENRICHMENT
(Common law)
(On behalf of the Nationwide Class, or, in the alternative,
on behalf of the Oregon Class and California Class, respectively)

202. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

203. Plaintiffs bring this claim on behalf of themselves and the Class under the common law of unjust enrichment, which is materially uniform in all states. In the alternative, Plaintiffs bring this claim on behalf of the Class under the laws of each state in which Plaintiffs and Class members purchased defective Power Systems.

204. Defendants designed, manufactured, produced, distributed, marketed,

and/or sold defective Power Systems during the relevant period herein.

205.   Plaintiffs and members of the Class conferred non-gratuitous benefits upon Defendants, without knowledge that Defendants' Power Systems contained the Defect.

206.   Defendants appreciated, or had knowledge of, the non-gratuitous benefits conferred upon them by Plaintiffs and members of the Class.

207.   Defendants accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the Class, with full knowledge and awareness that, as a result of Defendants' unconscionable wrongdoing, Plaintiffs and members of the Class were not receiving products of high quality, nature, fitness, or value that had been represented by Defendants and reasonable consumers would have expected.

208.   Retaining the non-gratuitous benefits conferred upon Defendants by Plaintiffs and members of the Class under these circumstances made Defendants' retention of the non-gratuitous benefits unjust and inequitable.

209.   Because Defendants' retention of the non-gratuitous benefits conferred by Plaintiffs and members of the Class is unjust and inequitable, Plaintiffs and members of the Class are entitled to, and hereby seek, disgorgement and restitution of Defendants' wrongful profits, revenue, and benefits in a manner established by the Court.

210.   At all times relevant hereto, Defendants designed, manufactured, produced, marketed, and/or sold defective Power Systems.

211.    Plaintiffs and members of the Class conferred non-gratuitous benefits upon Defendants, without knowledge that the Defective Power Systems contained the dangerous Defect.

212.    Defendants appreciated, or had knowledge of, the non-gratuitous benefits conferred upon them by Plaintiffs and members of the Class.

213.    Defendants accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the Class, with full knowledge and awareness that, as a result of Defendants' unconscionable wrongdoing, Plaintiffs and members of the Class were not receiving products of high quality, nature, fitness or value that had been represented by Defendants and reasonable consumers would have expected.

214.    Retaining the non-gratuitous benefits conferred upon Defendants by Plaintiffs and members of the Class under these circumstances made Defendants' retention of the non-gratuitous benefits unjust and inequitable.

215.    Because Defendants' retention of the non-gratuitous benefits conferred by Plaintiffs and members of the Class is unjust and inequitable, Plaintiffs and members of the Class are entitled to, and hereby seek disgorgement and restitution of Defendants' wrongful profits, revenue, and benefits in a manner established by the Court.

## VIII.    REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Class, respectfully requests that this Court:

Case 2:23-cv-00771-LA    Filed 05/19/23    Page 51 of 53    Document 1

a. Certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiffs are proper class representatives; and appoint Plaintiffs' counsel as Class Counsel;

b. Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace all defective Power Systems and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class Members with appropriate curative notice regarding the existence and causes of the Defect;

c. Award Plaintiffs and Class Members actual, compensatory, general, special, incidental, statutory, punitive, and consequential damages, costs, and disgorgement in an amount to be determined at trial;

d. Award to Plaintiffs the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

e. Award pre- and post-judgment interest at the maximum legal rate; and

f. Grant all such other relief as is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all claims so triable.

Dated: May 19, 2023

/s/ *Jennifer A. Lenze*
Jennifer A. Lenze, CA Bar # 246858

LENZE LAWYERS, PLC.
999 Corporate Drive, Suite 100
Ladera Ranch, California 92694
Telephone: (310) 322-8800
Facsimile: (310) 322-8811
jlenze@lenzelawyers.com

Elizabeth A. Fegan (*pro hac vice* to be filed)
Megan E. Shannon (*pro hac vice* to be filed)
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Phone: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com
megan@feganscott.com

*Attorneys for Plaintiffs and the Proposed Class*